THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELIAS LeCHUGA, Defendant-Appellant.

Second District   No. 76-193

Opinion filed January 17, 1978.

William Thomas Freeman, Jr., and Aldo E. Botti, both of Wheaton, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with attempt to commit murder in that he shot a police officer with a rifle. He was convicted in a jury trial and sentenced to serve not less than 12 nor more than 20 years in the penitentiary. The defendant appeals his conviction and sentence on the grounds that (1) he was so intoxicated at the time of the shooting that he was incapable of forming the specific intent to commit murder; (2) that he was not proven guilty of attempted murder beyond a reasonable doubt; (3) that his sentence in the light of the circumstances at the time of the offense is excessive and violates his rights under article I, section 11 of the Constitution of the State of Illinois.

The defendant is a Spanish-speaking person who was about 28 years old at the time of the offense. He was married and living in Aurora with his wife and four children, ranging in age from nine years to six months. The defendant had a history of drinking and becoming boisterous and belligerent when drunk. His wife testified that on the day of the offense, June 21, 1975, the defendant began drinking beer and continued drinking beer until he had consumed all the beer in the house which she said was two 12-packs—24 cans of beer. She said that around one or two o'clock in the afternoon, when he had consumed all the beer on hand, the defendant drove his car to a nearby tavern and returned about an hour later with another pack of beer and a bottle of whiskey. He began to drink the beer and whiskey, at which the wife testified she remonstrated, telling him that he could not handle both beer and whiskey at the same time. After consuming the beer and whiskey the defendant laid down on the living room couch and went to sleep. At about 3:30 p.m.—the wife testified—the defendant awoke and began to act violently around the house. He threw some object through a window of the house and then got his .22-caliber rifle and began shooting it in the house. His wife sent the children out of the house and the nine-year-old ran to the corner laundromat, where there was a telephone, and called the police. A radio communication alerted several squad cars, as well as a police van being driven by Officer Casale, to the fact that there was a man shooting a gun in the 500 block of South Broadway. A squad car and Officer Casale in his van proceeded to the 500 block of South Broadway in Aurora where they observed there were several people gathered in front of 524 South Broadway (the defendant's address) and some of the windows were broken out on one side of the house. Officer Casale parked his van across the street from 524 South Broadway and got out of it to cross the street when, he testified, he heard a "popping noise" and felt a sharp pain in his left hip. Immediately

afterward, he heard two more shots and a window in the van was shattered, apparently by a bullet. Whether the van was hit twice or only once is not clear, but there was a dent in the van in addition to the shattered window. Another officer testified he heard three shots. At this point officers from two squad cars converged on the house and the defendant was seen, first at the front door, and then a moment later running out the back door. He was apprehended still carrying his rifle, in the backyard of the adjoining house.

Officer Jacobs, the arresting officer, testified that he and other officers pursued the defendant into the adjoining yard and commanded the defendant to drop his gun, which he did not do immediately. After the officer approached closer and again commanded the defendant to drop his gun, Officer Jacobs testified, the defendant said, "I'll shoot you and then you can shoot me." However, the defendant then threw his rifle to the ground and the officers approached him, overpowered him and handcuffed him. The defendant was then placed in the back of the patrol wagon with Officers Jacobs and Wiskur riding in front. The patrol wagon was equipped with a plastic screen between the officers and the defendant. The screen, however, was not soundproof and was partly open. Officer Jacobs testified that one of the other officers "advised him [the defendant] of his rights" by which, he testified, he meant *Miranda* warnings, before the defendant was put in the patrol wagon to be taken to the police station. There was some discrepancy in the testimony as to the actual form and content of the *Miranda* warnings that were given to the defendant. Officer Jacobs testified that the ride to the police station took about five minutes and during that time the defendant was talking and yelling continuously and that he said, among other things, "I shot one of you bastards and I am glad. I'll get the rest of you fuckers." This was said in a loud, belligerent tone, according to the officer. Officer Jacobs testified the officers were simply riding in the front of the van and the defendant was in the back portion, but that the officers were not attempting to ask the defendant any questions while they were on the way to the police station. This alleged remark was the subject of an objection by defense counsel on the ground it amounted to using incriminatory statements which were made while the defendant was in custody without proper warnings of his *Miranda* rights. However, the objection was overruled by the trial court as being a voluntary, spontaneous utterance, not connected with any police interrogation and that point is not appealed here. The alleged remarks, however, had a bearing on the State's argument as to the guilty state of mind of the defendant, countering his defense that he was too intoxicated to realize what he was doing and that he was incapable of having the intent to murder the officer at the time he fired at him, as pointed out in closing argument.

While the defendant contended he was completely drunk at the time of the shooting and he had no memory of what occurred between the time he woke up, sometime after 3:30 p.m., and when he was apprehended, overpowered and handcuffed by the officers, there was some testimony and certain evidence which mitigated against this argument. The defendant's wife testified that he had drunk some 24 cans of beer and a quantity of whiskey on the morning and afternoon of the shooting. However, Officer Jacobs testified that when the defendant ran out of the house into the backyard and the adjoining yard, he did not stagger or appear drunk and that he did not exhibit any signs of a high degree of intoxication, either during the arrest or afterward at the police station. Officer Nelson of the Aurora Police Department testified that he had visited the LeChuga home about an hour or two after the defendant was arrested and that he had looked through the entire house, searching for spent shell casings and bullets, and that in the course of his inspection of various rooms in the house he had occasion to look into the garbage can in the kitchen and saw no beer cans there and that while he was looking through the house he saw only one beer can, which was in the basement and he saw no whiskey bottles anywhere.

Moreover, the circumstances indicate some degree of deliberation and consciousness on the defendant's part, which was not consistent with his theory of being "blacked out," due to intoxication. From the testimony of the police officer who first observed the defendant in the house, through a front or side door, and the evidence of ejected shells in the basement, and the hole in the basement window testified to by the State criminologist as being a bullet hole made from the inside of the basement, it appears that the defendant upon seeing the police approaching the house was in a clear enough mental state to retreat to the basement and to load and shoot his rifle well enough to hit the police van and Officer Casale from inside the basement. This was a distance of probably 100 feet and judging from the several photographs introduced into evidence, was a rather difficult shot. Moreover, we have the defendant's own words in the police van, on the way to the station, which the trial court determined to have been spontaneously uttered, that he was aware and not at all sorry that he had wounded one of the officers.

■■ The total circumstances related above seem to us to be sufficient to refute the defendant's contention that he was incapable, through intoxication, of having the mental state necessary to form the criminal intent to commit murder. It appears from the evidence that he had good physical control of the gun and was capable of rational thought. That the defendant fired the shots which wounded Officer Casale and damaged the police van is clearly established and the evidence points beyond a

reasonable doubt to enough presence of mind on defendant's part to repudiate the theory of a mental blackout due to intoxication. We cannot say that the jury was not justified in arriving at the conclusion that the defendant was guilty of the offense charged, beyond a reasonable doubt.

The defendant cites the case of *People v. Aguirre* (1975), 30 Ill. App. 3d 854, a decision of this court, as indicating that mental disturbance (induced in that case by a combination of LSD, wine and marijuana) can create a reasonable doubt as to the defendant's ability to form the requisite mental state for attempted murder. We must point out, however, that the defendant's conduct in the *Aguirre* case was much more bizarre than the conduct of the accused here. Moreover, there was solid evidence of a mixture of drugs and alcohol, a lack of previous history of aggressiveness (the defendant was a young college student) and altogether a totality of circumstances which induced in the judge's mind a reasonable doubt as to the specific intent needed for attempted murder. The case before us was tried before a jury and it, as the trier of fact, did not find the circumstances sufficient to create such a reasonable doubt. We do not consider the *Aguirre* case as being at all apposite to that now before us. The Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 6—3), provides as follows with regard to intoxication as a defense:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:

(a) Negatives the existence of a mental state which is an element of the offense; * * *."

The jury, under proper instructions, found the defendant was at the time of the offense capable of acting intentionally and the defense of intoxication is therefore irrelevant and the circumstances prove him guilty of the act of shooting the officer, beyond a reasonable doubt.

The defendant also contends that his sentence was excessive and violated his rights under article I, section 11 of the Illinois Constitution of 1970, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Defense counsel argues that the severe sentence here impairs the possibility of rehabilitation of the defendant and in view of his previous history (while the defendant had two previous convictions for burglary, they were approximately 10 years previous) and his good family record, as attested to by several witnesses, he had good potential for rehabilitation with which his present sentence is inconsistent.

We have carefully considered this argument. However, while Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) grants reviewing courts the power to reduce sentences, this

624

court must adhere to the guidelines set out by the supreme court in doing so. In the recent case of *People v. Perruquet* (1977), 68 Ill. 2d 149, the court in reversing the appellate court's reduction of a sentence said:

"We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight. We therefore reaffirm our long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." 68 Ill. 2d 149, 154.

While the sentence imposed is severe we cannot say the trial court abused its discretion, in view of the seriousness of the offense of which the jury in this case found the defendant guilty. We therefore find no basis on which to reduce the sentence.

The judgment of the circuit court of Kane County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.